**Peter H. Glade, WSBA #15681**
PeterGlade@MHGM.com
**Matthew A. Levin, WSBA #31011**
MattLevin@MHGM.com
**David B. Markowitz, OSB #742046**
(admitted *pro hac vice*)
DavidMarkowitz@MHGM.com
**J. Matthew Donohue, OSB #065742**
(admitted *pro hac vice*)
MARKOWITZ, HERBOLD, GLADE
 & MEHLHAF, P.C.
Suite 3000 Pacwest Center
1211 SW Fifth Avenue
Portland, OR  97204-3730
Tel:  (503) 295-3085
Fax:  (503) 323-9105

        Attorneys for Defendant Progressive
        Max Insurance Company

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| **ELAINE FOSMIRE**, | CV No.: 3:10-CV-05291-JLR |
| Plaintiff, | **DEFENDANT'S MOTION TO EXCLUDE THE EXPERT REPORT OF NAYAK L. POLISSAR, PH.D. IN SUPPORT OF CLASS CERTIFICATION, AND MEMORANDUM IN SUPPORT** |
| vs. | |
| **PROGRESSIVE MAX INSURANCE COMPANY**; **PROGRESSIVE CASUALTY INSURANCE COMPANY**; **PROGRESSIVE DIRECT INSURANCE CO.**; **PROGRESSIVE CORPORATION**, | NOTE ON MOTION CALENDAR: Friday, April 22, 2011 |
| Defendants. | ORAL ARGUMENT REQUESTED |

**DEFENDANT'S MOTION TO EXCLUDE**
CV No.: 3:10-CV-05291-JLR

**MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.**
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085

**TABLE OF CONTENTS**

Page

I. Standards of admissibility for expert evidence at the class certification stage. ................................................................................................................... 2

II. The Court should exclude Polissar's opinion because it lacks any reliable foundation or methodology. ........................................................................... 3

    A. Polissar's opinion is not based upon Progressive Max's data. ......... 4

    B. Polissar's opinion is not based upon data relevant to the proposed class. ................................................................................................... 4

    C. Polissar does not know the contents of the Siskin Data .................. 6

    D. Polissar has not validated the Siskin Data, and cannot correct existing errors in that data. .............................................................. 7

    E. Polissar has no reliable method for estimating diminished value for the proposed class or individuals. .................................................. 9

        1. Polissar has not created any model to show how he would calculate diminished value. .................................................. 9

        2. Polissar cannot explain the variables in his preliminary analysis. ................................................................................ 10

        3. Polissar cannot build a reliable model from the Siskin Data because he does not have complete information. ................. 11

        4. Polissar has no methodology to calculate individual damages. ............................................................................. 11

CONCLUSION ............................................................................................................ 12

DEFENDANT'S MOTION TO EXCLUDE - i -
CV No.: 3:10-CV-05291-JLR

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Honda Motor Co., Inc. v. Allen,*
   600 F.3d 813 (7th Cir. 2010) ........................................................................... 3

*Black v. Rhone-Poulenc, Inc.,*
   19 F. Supp. 2d 592 (S.D. W. Va. 1998) ........................................................... 5

*Bourjaily* v. *United States,*
   483 U.S. 171 (1987) ......................................................................................... 3

*Boyd* v. *City & Cnty of S.F.,*
   576 F.3d 938 (9th Cir. 2009) ........................................................................... 2

*Chudner v. Transunion Interactive, Inc.*,
   Slip Copy, 2010 WL 5662966 (D. Del. 2010) ................................................. 9

*Cuffari v. S-B Power Tool Co.,*
   80 F. App'x 749 (3d Cir. 2003) ........................................................................ 5

*Daubert v. Merrell Dow Pharm., Inc.,*
   509 U.S. 579 (1993) ..................................................................................... 2, 3

*Dukes v. Wal-Mart Stores, Inc.*,
   603 F.3d 571 (9th Cir. 2010),
   *cert. granted*, 131 S. Ct. 795 (2010) ........................................................... 2, 3

*Hovenkotter v. Safeco Ins. Co. of Ill.*,
   C09-0218JLR, 2010 WL 3984828, *7 (W.D. Wash. 2010),
   *perm. appeal denied,* No. 10-800200 (9th Cir., Dec. 29, 2010) ..................... 5

*Lust v. Merrell Dow Pharms., Inc.,*
   89 F.3d 594 (9th Cir. 1996) ............................................................................. 3

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   259 F.3d 154 (3d Cir. 2001) ............................................................................ 9

*Reed v. Advocate Health Care,*
   268 F.R.D. 573 (N.D. Ill. 2009) .................................................................... 12

*United States v. Jackson,*
   470 F.3d 299 (6th Cir. 2006) ........................................................................... 5

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 2, 3

Fed. R. Evid. 702 ............................................................................................. 2, 3

**Other Authorities**

M<span style="font-variant:small-caps">anual</span> F<span style="font-variant:small-caps">or</span> C<span style="font-variant:small-caps">omplex</span> L<span style="font-variant:small-caps">itigation</span> (T<span style="font-variant:small-caps">hird</span>) 108 (Fed. Judicial Ctr.
   2003) ............................................................................................................... 4

**DEFENDANT'S MOTION TO EXCLUDE - ii -**
**CV No.: 3:10-CV-05291-JLR**

M<span style="font-variant:small-caps">arkowitz</span>, H<span style="font-variant:small-caps">erbold</span>,
G<span style="font-variant:small-caps">lade</span> & M<span style="font-variant:small-caps">ehlhaf</span>, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085

Defendant Progressive Max Insurance Company of Illinois ("Progressive Max") moves to exclude the Expert Report of Nayak L. Polissar, Ph.D. in Support of Class Certification ("the Polissar Report"), which is attached as Exhibit F to Plaintiff's Motion for Class Certification and Supporting Memorandum of Points and Authorities. ("Polissar Report", Dkt. # 64-1.) The Polissar Report should be excluded because Polissar's opinion – that he can estimate class-wide and individual diminished value damages in this litigation – has no reliable foundation or supporting methodology.

Polissar does not base his opinion upon on any of the information Progressive Max has produced to plaintiff, or any data representative of the class. In fact, Polissar has never seen any data produced by Progressive Max in this litigation, and admits he does not know the definition of the class plaintiff seeks to certify here. Instead, Polissar's opinion – and any future opinion he would render – is based exclusively on almost 10-year-old data that Polissar inherited from Dr. Bernard Siskin (the "Siskin Data"), a former expert employed by plaintiff's counsel. Polissar blindly relies upon the Siskin Data without knowing its content. Polissar cannot define numerous important variables within the Siskin Data, and admits that he has not validated the dataset. Additionally, the Siskin Data has a number of objective coding errors that cannot be corrected because the underlying data collection sheets have been destroyed.

Polissar has no reliable methodology or principles to explain his opinion. Polissar has not developed, specified or estimated any regression model to calculate class-wide damages. Rather, Polissar merely believes he will be able to build a model that will accurately estimate diminished value for the class. Although he conducted some preliminary analyses on the Siskin Data, Polissar cannot define or explain many of the variables he used to perform his analyses. Polissar also acknowledges that he should consider information outside the Siskin Data to accurately estimate diminished value, but nonetheless will only use the Siskin Data for any statistical modeling he will perform here. Additionally, even assuming Polissar could reliably estimate diminished value for the class with a formula, he has failed to demonstrate

**DEFENDANT'S MOTION TO EXCLUDE - 1 -**
CV No.: 3:10-CV-05291-JLR

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

1  how he could verify that the average would be reasonably representative of individual
2  vehicles within the class.
3       In sum, plaintiff asks the Court to join her in making a leap of faith in Polissar's
4  ability to create a reliable, scientifically supported model someday in the future based solely
5  on old data collected on vehicles that do not represent plaintiff's proposed class definition.

**I.     Standards of admissibility for expert evidence at the class certification stage.**

Trial courts must act as gatekeepers to ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993). Under *Daubert,* the trial judge has the "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.; Boyd* v. *City & Cnty of S.F.,* 576 F.3d 938, 945 (9th Cir. 2009). Federal Rule of Evidence 702, which effectively codified *Daubert*, states that an expert may testify in the form of an opinion only if "(1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

When considering class certification under Fed. R. Civ. P. 23, the district court "must perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir. 2010), *cert. granted*, 131 S. Ct. 795 (2010)[1]. The Ninth Circuit has not yet decided whether this "rigorous analysis" requires a full *Daubert* analysis at the class certification stage. *Dukes,* 603 F.3d at 603 n. 22 (declining to rule whether full *Daubert* analysis required at class certification stage, but noting it is within trial court's discretion.). Consistent with *Dukes*, the Seventh Circuit recently held that when an expert's report or testimony is "critical to class certification," the district court "must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion." *Am. Honda Motor Co., Inc. v.*

---

[1] The United States Supreme Court held oral argument in *Dukes v. Wal-Mart Stores, Inc.* on March 29, 2011, and its decision is expected by the end of June 2011.

**DEFENDANT'S MOTION TO EXCLUDE - 2 -**
**CV No.: 3:10-CV-05291-JLR**

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

*Allen,* 600 F.3d 813, 815-16 (7th Cir. 2010).  Thus, it is necessary to "resolve any challenge to the reliability of information provided by an expert if that information is relevant to establishing any of the Rule 23 requirements for class certification."  *Id.*

Accordingly, an expert's qualifications may be challenged by a *Daubert* motion at the class certification stage, and at a minimum an expert must present "scientifically reliable evidence" that satisfies the requirements of Fed. R. Evid. 702.  *Dukes,* 603 F.3d at 603.  The proponent of the expert evidence bears the burden of proving its admissibility by a preponderance of the evidence.  *Daubert,* 509 U.S. at 592; *Bourjaily* v. *United States,* 483 U.S. 171, 175 (1987); *Lust v. Merrell Dow Pharms., Inc.,* 89 F.3d 594, 598 (9th Cir. 1996).  Although a district court will not, at the class certification stage, determine which expert's testimony is ultimately more persuasive, a court should "delve[ ] into the substance of the expert testimony . . . to the extent necessary to determine if it is sufficiently probative of an inference . . . to create a common question" under Rule 23(a).  *Dukes,* 603 F.3d at 605.

## II. The Court should exclude Polissar's opinion because it lacks any reliable foundation or methodology.

Prior to ruling on plaintiff's motion for class certification here, the Court should consider Progressive Max's challenge to plaintiff's expert testimony based on its "principles and methodology."  *Daubert*, 509 U.S. at 595.  Particularly here, where plaintiff relies *solely* on Polissar's expert opinion as proof of common damages, the Court must consider the substance of expert evidence to determine its probative value and foundational reliability.  *Dukes*, 603 F.3d at 602.

No reliable foundation or methodology exists for Polissar's opinions that "class-wide and individual damages can be determined" or that "[t]he estimates and margin of error can be presented as evidence of class-wide and individual damages before a jury or court." (Polissar Report ¶ 4.)  Polissar's claim – that he will be able to "develop a valid statistical model to estimate the grand total of diminished value of all cars included in the class action[,] and to estimate the diminished value of individual cars included in the class action

**DEFENDANT'S MOTION TO EXCLUDE - 3 -**
**CV No.: 3:10-CV-05291-JLR**

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085

1  in order to allocate damages among class members" (Polissar Report ¶ 3) – is based on the

2  non-representative, old data he is unfamiliar with, and data filled with errors that cannot be

3  corrected. Moreover, Polissar does not include any methodology in his report to explain how

4  he will calculate diminished value.

5        **A.**     **Polissar's opinion is not based upon Progressive Max's data.**

6        On October 11, 2010, Progressive Max produced the electronic information plaintiff

7  requested regarding UMPD claims that Progressive Max had paid to its insureds during the

8  class period. (Donohue Decl. ¶ 2.) Polissar, however, does not base his opinion on

9  Progressive Max's data. He has never even seen it (*See* Ex. A to Donohue Decl., Deposition

10 of Nayak L. Polissar, Ph.D. ("Polissar Dep.") at 27:17-21 ["Q. So it's correct that you

11 haven't received, to your knowledge, any information that Progressive, the defendants, have

12 produced to the plaintiff's lawyers about cars that were insured by Progressive? A. Right, I

13 have not received that."])

14       Not only has Polissar rendered an opinion that he can calculate individual and class-wide

15 diminished value without seeing or analyzing Progressive Max's data, but Polissar also fails to

16 explain in his report how he would use Progressive Max's information to do that analysis if

17 plaintiff's counsel provides him that data. The Polissar Report is completely silent on this

18 subject. Accordingly, the Polissar Report does not support plaintiff's statement that "although

19 Plaintiff's and Class members' individual damages may vary, the amount of their individual and

20 aggregate damages can be calculated using available, objective information contained in

21 Progressive's own electronic records." (Pl.'s Mot. for Class Cert. at 24:18-20, Dkt. #64.)

22       **B.**     **Polissar's opinion is not based upon data relevant to the proposed class.**

23       In order for Polissar to demonstrate that he can isolate the effect of diminished value

24 for the proposed class, he would have to build a statistical model based upon data

25 representative of the class. *See* MANUAL FOR COMPLEX LITIGATION (THIRD) 108 (Fed.

26 Judicial Ctr. 2003) ("the reliability and validity of estimates about the population derived

**DEFENDANT'S MOTION TO EXCLUDE - 4 -**
**CV No.: 3:10-CV-05291-JLR**

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

from the sampling are critical. The methods used must conform to generally recognized statistical standards. Relevant factors include whether ... [i] the sample chosen was representative of that population [and] . . . [ii] the data were analyzed in accordance with accepted statistical principles."). Courts regularly reject proffered expert testimony that is not based on a representative sample population. *See United States v. Jackson,* 470 F.3d 299, 311 (6th Cir. 2006) (holding "sufficient indicia of reliability may be found [only] where ... a proper random selection procedure was employed"); *Cuffari v. S-B Power Tool Co.,* 80 F. App'x 749, 751 (3d Cir. 2003) (striking expert testimony based on random survey not representative of target population, stating opinion "is highly speculative, and without sufficient scientific foundation or practicality and [thus] falls short of the *Daubert* standards of reliability"); *Black v. Rhone-Poulenc, Inc.,* 19 F. Supp. 2d 592, 602-04 (S.D. W. Va. 1998) (striking proffered expert testimony where party offering it failed to show that sample was representative of target data).

Polissar could not state whether his opinion is based upon data that is representative of the class because Polissar has never seen a description of the class. (Polissar Dep. at 192:12-193:22.) Rather than ensure his opinion relied on representative data, Polissar based his opinion exclusively on the Siskin Data. (*See* Polissar Dep. at 31:5-10; 143:23-144:2).[2] The Siskin Data, however, is hopelessly outdated. Siskin collected the underlying information for the Siskin Data approximately 10 years ago by sending inspectors to various car auctions throughout the United States. (Polissar Report ¶¶ 17-21.) At these various auctions, the inspectors collected information on both damaged and undamaged vehicles, which Dr. Siskin then used to create his database. (*Id.*)

---

[2] This Court is familiar with this auction survey data. In *Hovenkotter v. Safeco Ins. Co. of Ill.*, C09-0218JLR, 2010 WL 3984828, *7 (W.D. Wash. 2010), *perm. appeal denied,* No. 10-800200 (9th Cir., Dec. 29, 2010), the same set of plaintiff attorneys hired Dr. Polissar to opine that diminished value could be determined on a class-wide and individual basis. However, this Court excluded Dr. Polissar's testimony in *Hovenkotter* because the plaintiff submitted the report after the deadline for expert disclosures.

**DEFENDANT'S MOTION TO EXCLUDE - 5 -**
**CV No.: 3:10-CV-05291-JLR**

**MARKOWITZ, HERBOLD, GLADE & MEHLHAF, P.C.**
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

1  Polissar cannot dispute that the vehicles in the Siskin Data are not representative of
2  the vehicles in the class plaintiff seeks to certify.  The Siskin Data consists of older vehicles
3  that differ in age, class, makes and models from the vehicles in the proposed class.  (Polissar
4  Dep. at 192:12-193:22; 200:3-22.)  And because Polissar does not know what vehicles are in
5  the proposed class in this litigation, he does not know how he would (or could) apply any
6  result from the Siskin Data to the proposed class:

> Q.  So if I can clarify your answer, your answer is that you agree that it's not representative, the auction survey data is not representative of the class sought to be certified, but you don't believe that that's going to be a problem for you on down the road?
>
> A.  Well, wait, I have not seen a description of the class that will be applied [sic] to yet, so certainly in terms [sic] age I don't think it's going to be representative of them.  I mean, the age – excuse me, the year of determination, the year of activity of the car won't be representative.
>
> Q.  Well, you are familiar – I am sorry.
>
> A.  But as far as a, you know, mixture of makes and models and age at the time of wreck and mileages and so forth, I have not seen a description of the class that we will be applying this to, so I don't – I can't comment on that yet.

(Polissar Dep. at 193:3-19.)

Accordingly, the Siskin Data cannot be relied upon to draw any conclusions about the diminished value of the vehicles in the proposed class because it is not representative of the class.  Despite this deficiency, Polissar cannot explain how he would use the Siskin Data to account for differences in age, class and make and model of the vehicles in the proposed class.  (Polissar Dep. at 196:20-197:17.)

**C.     Polissar does not know the contents of the Siskin Data.**

Polissar also does not know the definitions of certain important variables in the Siskin Data.  For example, Polissar does not know what criteria, if any, was used by the inspectors at the auctions to value the variables INTCOND (interior condition) and EXTCOND (exterior condition) of each vehicle as either:  excellent; average; below average or poor. (Polissar Dep. at

DEFENDANT'S MOTION TO EXCLUDE - 6 -
CV No.: 3:10-CV-05291-JLR

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

150:4-151:21; 172:24-173:3;173:7-9; 174:9-11.)  Polissar does not know how the Blue Book values for the vehicles in the Siskin Data were collected, or whether they are accurate.  (*Id.* at 164:5-165:14.)  Polissar also cannot define information coded in the Siskin Data as the variables:  NORPTDAM; FRDAMG; LDOR; GLASS, PANEL; FRDANG; FRAM; DAY; and Random_ID.  (*Id.* at 87:7-89:8; 170:7-172:23; 178:15-179:24.)

Additionally, Polissar cannot explain the criteria used to assign vehicles into Class 1 through Class 12 in the Siskin Data – or why the Siskin Data does not have any cars in Class 9 or Class 10.  (Polissar Dep. at 181:7-182:8.)  When Polissar was asked how he would account for new models of cars that exist in the proposed class, but simply did not exist ten years ago when the Siskin Data was being collected, Polissar stated that he would "probably have to talk to a subject matter expert in that area" to ask them which would be the best fit or whether there is a good fit for a new car in that class spectrum.  (*Id.* at 200:11-22.)  In other words, Polissar plans to apply the Siskin Data by forcing vehicle models in the current class that do not exist in the Siskin Data into one of the existing twelve classes of vehicles in the Siskin Data – despite not knowing the criterion for Classes 1-12, or how he would make that determination.

### D. Polissar has not validated the Siskin Data, and cannot correct existing errors in that data.

Even assuming that Polissar could use the Siskin Data to render a relevant opinion on the putative class in this litigation, that data set does not provide a reliable foundation for his opinion.  Polissar admits that he is responsible for ensuring the integrity of the data that underlies his methods and calculation of damages here.  (Polissar Dep. at 86:18-21.)  However, Polissar also admits that he has not done any tests or analysis on the Siskin Data to ensure its reliability.  (*Id.*  at 161:12-15.)

Polissar cannot ensure the Siskin Data was accurately and appropriately collected because the data was collected almost ten years ago.  For example, Polissar cannot go back and test how the inspectors collected the data at the auto auctions because the data collection forms have been destroyed.  (Polissar Dep. at 138:4-22.)  And Polissar has not discovered a final written protocol

**DEFENDANT'S MOTION TO EXCLUDE - 7 -**
**CV No.: 3:10-CV-05291-JLR**

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085

for data collection, and does not know if one exists. (*Id.* at 158:3-10). Polissar therefore cannot determine basic information such as the criteria inspectors used to grade information like interior and exterior condition of the vehicles at auction; whether the undamaged vehicles were selected randomly at auction, or how Blue Book data was collected for each vehicle. (*Id.* at 87:7-89:8; 151:8-21; 164:5-165-14; 170:7-172:23; 178:15-179:24.) Because Polissar cannot confirm how the data was collected, he cannot claim the data is reliable.

Polissar mistakenly believed that the inspectors collecting information for the Siskin Data followed a written protocol, and were not told the purpose of the study in order to prevent judgment bias in detecting and rating the cars. (Polissar Report ¶ 20.) Polissar testified that he would want to prevent judgment bias by the inspectors in order to "get an accurate picture of the – what's actually damaged." (Polissar Dep. at 159:7-10.) However, Polissar apparently does not know that Mike Harber – one of the inspectors who collected the Siskin Data – and the other inspectors did not follow any written protocol, or adhere to any systematic criteria to collect the data. (Ex. B to Donohue Decl., Deposition of Darrell Michael Harber ("Harber Dep.") at 127:4-128:20; 133:4-23; 140:10-141:3; 141:14-145:18; 146:13-153:24.) Harber testified that he trained other inspectors to do the data collection, and that he has worked with plaintiff's attorney Debra Hayes for over 13 years. (*Id.* at 94:3-13; 138:21-139:5.) Harber further testified he knew the Siskin Data would be used to create a model for damages in class action litigation (*id.* at 120:16-121:23), and that plaintiffs' attorneys were sometimes present during the inspections of the vehicles at auction (*id.* at 120:2-18).

Had Polissar attempted to verify or test the Siskin Data, he would have discovered that it contains objective errors that cannot be corrected. First, a necessary variable for Polissar's estimation of diminished value is the Blue Book value for each vehicle in the Siskin Data. However, the Blue Book values in the Siskin Data for many of the vehicles that Polissar has used for his estimation sample are either just plain wrong, or are deficient. (Ex. C to Donohue Decl., Expert Report of George R. Schink, Ph.D., in Opposition to Class Certification ("Schink

**DEFENDANT'S MOTION TO EXCLUDE - 8 -**
**CV No.: 3:10-CV-05291-JLR**

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

Report") ¶ 22, Ex. 2.) These errors in Blue Book values cannot be corrected because the Siskin Data does not contain the information on each vehicle needed to fix the deficiencies, or identify the correct Blue Book value. (Schink Report ¶¶ 23-24 Exs. 4-6.)

On top of that, vehicles in the data set have incorrect make/models designations, incorrect VINs, incorrect trim levels, and incorrect vehicle type designations (e.g., car versus truck). (Schink Report ¶ 25, Exs. 7 & 8.) Again, these errors cannot be corrected because the underlying data collection sheets have been destroyed.

### E. Polissar has no reliable method for estimating diminished value for the proposed class or individuals.

#### 1. Polissar has not created any model to show how he would calculate diminished value.

Polissar has not developed, specified, or estimated any regression model to show how he would calculate diminished value for individual vehicles or vehicles in the class. (Polissar Dep. at 29:8-16; 31:15-19.) Rather, Polissar only speculates that he will be able to build a regression model on the Siskin Data to support his opinion. (*Id.* at 31:24-32:3.) Polissar's prediction that he will be able to create a model is insufficient proof that plaintiff will be able to establish common damages. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001) (affirming denial of class certification where plaintiff's expert asserted he *could* create a model to calculate damages and failed to provide a model formula); *Chudner v. Transunion Interactive, Inc.*, Slip Copy, 2010 WL 5662966 (D. Del. 2010) (denying class certification where plaintiffs failed to establish how actual damages will be proven as to each putative class member via common evidence, stating a plaintiff "must do more than state a formula that could be used to calculate class-wide damages.").

Here, Polissar has not explained how he would develop a valid statistical model to estimate class-wide and individual diminished value damages. Polissar's description of the methodology underlying his opinion merely recites generic principles of multiple linear regression analysis. (Polissar Report ¶¶ 5-16.) Although Polissar opines that he can estimate

**DEFENDANT'S MOTION TO EXCLUDE - 9 -**
**CV No.: 3:10-CV-05291-JLR**

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

1   class-wide and individual damages here, Polissar undisputedly has not:  (1) examined any

2   data representative of the class; (2) examined any data from Progressive Max; (3) developed

3   any model; or (4) explained the specific methodology underlying his opinion.

### 2. Polissar cannot explain the variables in his preliminary analysis.

Polissar admits that the sole basis for his opinion here is that he reviewed Dr. Siskin's prior regression work, and ran some preliminary analyses on the Siskin Data to determine that the relationship between certain observable attributes of prior physical damage and sales price in the Siskin Data is statistically significant. (Polissar Dep. at 32:14-22; Polissar Report ¶ 12.) Polissar does not even explain the preliminary analyses he conducted; he simply mentions it in passing.[3]

When tested at his deposition, Polissar could not define a number of variables that he used to conduct his preliminary analysis.  For example, Polissar relies upon a stepwise regression analysis he conducted on the Siskin Data to demonstrate a statistical significance between damage and price.  However, as shown above, Polissar is unfamiliar with significant variables in the Siskin Data.  Despite not knowing the definition of FRMDAMG, LDOR, GLASS, and PANEL – Polissar nonetheless used these variables as damage indicators in his preliminary analysis. (Polissar Dep. at 87:7-89:8.)  Similarly, Polissar used the explanatory variable "FRMDAMGR" in the preliminary analyses named "runintmodel ~ 10-29-10.txt" – but could not explain how that variable was constructed. (*Id.* at 79:21-25.)  In other words, Polissar does not understand the variables in his own preliminary analysis, which is the only analysis he has conducted to support his opinion here that he can estimate diminished value for the class and individuals within the class.

---

[3] Because the Polissar Report does not explain what preliminary analyses Polissar conducted to support his opinion, defendants' counsel requested production of the preliminary analyses, as well as other materials Polissar relied on.  Although plaintiff's counsel produced some material before the November 30, 2010 deposition of Polissar, plaintiff's counsel produced a large volume of materials at the deposition (including a DVD of electronic information), and have continued to supplement materials related to Polissar's work as recently as March 18, 2011.  (Donohue Decl. ¶ 6.)

**DEFENDANT'S MOTION TO EXCLUDE - 10 -**
CV No.: 3:10-CV-05291-JLR

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON  97204-3730
(503) 295-3085

### 3. Polissar cannot build a reliable model from the Siskin Data because he does not have complete information.

Polissar cannot provide any reliable methodology to estimate diminished value for the class because the Siskin Data does not contain all the objective information necessary to establish the value of a vehicle. Polissar admits that his opinion is "tied" to whatever information is in the Siskin Data – i.e., if the data already does not contain certain accurate information on those vehicles, Polissar has no ability to go back in time and supplement the Siskin Data. (Polissar Dep. at 54:6-18.)[4]

Polissar admits that the Siskin Data may not contain information that he should consider in order to accurately estimate the price the market price of the vehicle before and after prior an accident. (Polissar Dep. 47:8-50:11.) Polissar also has no reliable methodology to account for this missing data. For example, if Polissar finds that data necessary to estimate *pre-accident* value of the vehicle is not in the Siskin Data, Polissar "would probably talk to somebody who is an expert in – who knows about what affects sales price, somebody who has experience in that area, somebody who is involved in selling and knows about it." (*Id.* at 48:25-49:3.) Similarly, Polissar has no reliable methodology to account for *post-accident* variables not included in the Siskin Data. Although Polissar agrees that it's possible that the market price of a properly repaired vehicle could be greater than the market price of that vehicle before it got into an accident, – and that he might include that data in his modeling if it were available – Polissar has simply ignored this possibility because the Siskin Data does not contain this information. (*Id.* at 50:23-51:15.)

### 4. Polissar has no methodology to calculate individual damages.

Polissar has no methodology to estimate diminished value for individual vehicles in the class. (Schink Report, ¶¶ 60-62.) Put another way, even assuming Polissar could reliably

---

[4] For example, it is undisputed that the inspectors did not systematically collect at the various auctions the following information for each vehicle: (1) trim line; (2) engine size; (3) installed equipment; (4) transmission type (5) drive-train; (6) installed options; (7) degree of prior damage; (8) ownership history; and (9) whether imitation or original parts were used to repair the damaged vehicles. (Schink Report ¶ 21.) This information – unavailable to Polissar -- affects the sale price of a vehicle and therefore affects the estimation of diminished value. (Schink Report ¶21.)

**DEFENDANT'S MOTION TO EXCLUDE - 11 -**
**CV No.: 3:10-CV-05291-JLR**

measure the average diminished value, he has no methodology to establish that the average effect is a reasonable representation of the impact suffered by all members of the proposed class. *See Reed v. Advocate Health Care,* 268 F.R.D. 573, 589 (N.D. Ill. 2009) (excluding expert testimony that purportedly calculated average class-wide loss when expert could not opine that the average loss was reasonably representative of losses incurred by individual class members). Here, no reliable formulaic approach exists for estimating diminished value for the individual vehicles in the class because there are simply too many individual factors that could affect the price of a vehicle before the accident and post-repair. (Schink Report ¶¶ 64-67.)

## CONCLUSION

For all of the above reasons, the Court should exclude the Expert Report of Nayak L. Polissar, Ph.D. in Support of Class Certification.

DATED this 5th day of April, 2011.

        MARKOWITZ, HERBOLD, GLADE
        &amp; MEHLHAF, P.C.

By: */s/ J. Matthew Donohue*
J. Matthew Donohue, OSB #065742
(admitted *pro hac vice*)
(503) 295-3085
Of Attorneys for Defendant Progressive Max Insurance Company

FOSM\241054

**DEFENDANT'S MOTION TO EXCLUDE - 12 -**
**CV No.: 3:10-CV-05291-JLR**

MARKOWITZ, HERBOLD,
GLADE & MEHLHAF, P.C.
SUITE 3000 PACWEST CENTER
1211 SW FIFTH AVENUE
PORTLAND, OREGON 97204-3730
(503) 295-3085

## ATTORNEY CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2011, I have made service of the foregoing **DEFENDANT'S MOTION TO EXCLUDE THE EXPERT REPORT OF NAYAK L. POLISSAR, PH.D. IN SUPPORT OF CLASS CERTIFICATION, AND MEMORANDUM IN SUPPORT** on the party/ies listed below in the manner indicated:

Van Bunch
Bonnett Fairbourn Friedman & Balint, PC
57 Carriage Hill
Signal Mountain, TN  37377

- ☐ U.S. Mail
- ☐ Facsimile
- ☐ Hand Delivery
- ☐ Overnight Courier
- ☐ Email   vbunch@bffb.com
- ☒ Electronically via USDC CM/ECF system

David A. Futscher
Parry Deering Futscher & Sparks, PSC
PO Box 2618
Covington, KY  41012-2618

- ☐ U.S. Mail
- ☐ Facsimile
- ☐ Hand Delivery
- ☐ Overnight Courier
- ☐ Email   dfutscher@pdfslaw.com
- ☒ Electronically via USDC CM/ECF system

Stephen M. Hansen
Stephen M. Hansen, P.S.
1703A Dock Street
Tacoma, WA  98402-4441

- ☐ U.S. Mail
- ☐ Facsimile
- ☐ Hand Delivery
- ☐ Overnight Courier
- ☐ Email   steve@stephenmhansenlaw.com
- ☒ Electronically via USDC CM/ECF system

Charles Clinton Hunter
Debra Brewer Hayes
Reich & Binstock LLP
4265 San Felipe, Suite 1000
Houston, TX  77027

- ☐ U.S. Mail
- ☐ Facsimile
- ☐ Hand Delivery
- ☐ Overnight Courier
- ☐ Email   chunter@rbfirm.net
            dhayes@dhayeslaw.com
- ☒ Electronically via USDC CM/ECF system

Elaine A. Ryan
Patricia N. Syverson
Bonnett Fairbourn Friedman & Balint, PC
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012

- ☐ U.S. Mail
- ☐ Facsimile
- ☐ Hand Delivery
- ☐ Overnight Courier
- ☐ Email   eryan@bffb.com
            psyverson@bffb.com
- ☒ Electronically via USDC CM/ECF system

DATED this 5th day of April, 2011.

/s/ J. Matthew Donohue
_____
J. Matthew Donohue, OSB #065742
(admitted *pro hac vice*)
Attorney for Defendant Progressive Max Insurance Company

**CERTIFICATE OF SERVICE**