UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELAINE FOSMIRE,

              Plaintiff,

        v.

PROGRESSIVE MAX INSURANCE
COMPANY, et al.,

              Defendants.

CASE NO. C10-5291JLR

ORDER

## I.      INTRODUCTION

This is a putative class action based on Plaintiff Elaine Fosmire's allegations that

Defendants Progressive Max Insurance Company ("Progressive Max"), Progressive

Casualty Insurance Company ("Progressive Casualty"), Progressive Direct Insurance

Company ("Progressive Direct"), and Progressive Corporation (collectively,

"Progressive") sold automobile insurance policies in Washington State and throughout

the United States that contained coverage for underinsured and uninsured ("UIM")

1   property damages.   (*See* Am. Compl. (Dkt. # 105) ¶ 1.2.)  Ms. Fosmire alleges that

2   Progressive's standard form UIM policies uniformly "obligated Progressive to pay to the

3   policyholder 'damages which an insured is legally entitled to recover' from the owner or

4   operator of an uninsured/underinsured motor vehicle." (*Id.*; *see also id.* ¶ 9.3; Class Cert.

5   Mot. (Dkt. # 64) at 1.)  Ms. Fosmire contends that Washington and the other states in

6   which Progressive issues UIM insurance policies require Progressive to pay its insured

7   not only for the cost to repair their damaged vehicle, but also for the diminution in value

8   that is associated with the repairs.  Ms. Fosmire alleges that diminished value losses

9   result from the irreparable residual damage that remains even though a vehicle has been

10   properly repaired.  (*See* Am. Compl. ¶ 1.3.)  Ms. Fosmire further claims that Progressive

11   has breached its contractual obligations to pay diminished value losses to her, as well as

12   to the other putative class members.

13        There are two motions before the court:  (1) Ms. Fosmire's motion for class

14   certification (Dkt. ## 64 (sealed) & 91 (redacted)), and (2) Progressive's motion to

15   exclude the expert report of Dr. Nayak L. Polissar in support of the class certification

16   (Dkt. # 87).  Having reviewed the relevant law and the papers submitted in support and

17   opposition to the motions, and having heard the oral argument of counsel on October 7,

18   2011, the court GRANTS Progressive's motion to exclude the expert report, and DENIES

19   Ms. Fosmire's motion for class certification.

20                    **II.        FACTUAL AND PROCEDURAL BACKGROUND**

21        On June 5, 2007, Ms. Fosmire's 2007 Mazda was damaged in a collision with an

22   uninsured motorist in King County, Washington.  (Am. Compl. ¶ 6.1.)  Ms. Fosmire was

1   insured by Progressive Max, and her insurance policy included UIM coverage for

2   physical damages.   (*Id.* ¶ 6.2.)  Progressive paid for repairs to Ms. Fosmire's vehicle.

3   (*Id.*)  After the repairs were complete, Ms. Fosmire had her vehicle inspected for

4   diminished value loss and made a demand for this loss.  (*See id*. ¶ 6.4.)  She was advised,

5   however, that her policy did not cover diminished value loss.  (*Id.* ¶ 6.5.)

6        In response, Ms. Fosmire brought suit against Progressive in the form of a putative

7   class action for breach of contract, as well as for declaratory and injunctive relief.  (*Id.* ¶¶

8   8.1-9.26.)  She asserts that Progressive did not fully inspect her vehicle for diminished

9   value loss, did not fully compensated her for diminished value loss, and did not inform

10  her about diminished value loss and her right to recover it.  (*Id.* ¶ 6.6.)

11       Although Progressive acknowledges the potential for diminished value loss (*see*

12  Hansen Decl. (Dkt. # 65) Ex. 2 ("Progressive Claims Standards") at 56), Ms. Fosmire

13  asserts that Progressive nevertheless avoids paying this loss under its UIM coverage by

14  design (*see* Class Cert. Mot. at 1).  Ms. Fosmire alleges that when a Progressive insured

15  reports a UIM claim for property loss, Progressive does not disclose to the insured that

16  they may make a claim for diminished value, but rather unfairly burdens the insured to

17  learn about, pursue, and prove a claim for diminished loss independently.  (*See* Am.

18  Compl. ¶¶ 8.6, 8.8.)  Progressive does not consider a claim for diminished value until

19  such time as a customer specifically states that he or she would like to make a claim for

20  diminished value and presents some type of proof.  (*See, e.g.,* Hansen Decl. Ex. 3 ("Hicks

21  Dep.") at 61-62 (Progressive does not consider a diminished value claim until the insured

22  says "Hey, I would like to present a [diminished value] claim" and then presents some

ORDER- 3

1    type of proof); *Id.* Ex. 16 ("Norris Dep.") at 99-101;  Progressive Claims Standards at 57

2    ("It is the claimant's duty to establish that damage for diminution of value was

3    sustained.").)  Ms. Fosmire refers to this as Progressive's "don't ask, don't tell" policy

4    concerning diminished value.  (*See* Class Cert. Mot. at 2-3, 6-10.)

5           On August 31, 2010, the court dismissed Ms. Fosmire's claims with respect to

6    Progressive Casualty, Progressive Direct, and Progressive Corporation without prejudice,

7    but also granted Ms. Fosmire leave to move to amend her complaint as appropriate (Dkt.

8    # 40 at 5-6, 10), and to conduct discovery into the relationship between Progressive Max

9    and the dismissed Progressive entities (*see* Min. Ord (Dkt. # 48).  Class discovery also

10   proceeded between Progressive Max and Ms. Fosmire with regard to the seven states[1] in

11   which Progressive Max issues policies.  (*See* Resp. to Mot. to Am. (Dkt. # 67) at 2.)  On

12   March 3, 2011, Ms. Fosmire filed a motion to amend her complaint to include additional

13   allegations concerning the inter-relatedness of the four original defendants, and to add

14   again the three defendants that the court had previously dismissed based on the

15   inadequate pleading in Ms. Fosmire's original complaint.  (Dkt. # 59.)  On September 26,

16   2011, the court granted Ms. Fosmire's motion for leave to amend her complaint to re-add

17   the previously dismissed defendants.  (Dkt. # 104.)  These three defendants issue UIM

18   policies in an additional 17 states.  (*See* Resp. to Mot. to Am. at 2.)

19

20

21   ───────────────

22           [1] Those states are Georgia, Ohio, Rhode Island, South Carolina, Virginia, Washington, and West Virginia. (Class Cert. Mot. at 1 n.2.)

On March 8, 2011, Ms. Fosmire also filed her present motion to certify her class action. (Dkt. # 64.)  On April 5, 2011, Progressive filed its present motion to exclude Ms. Fosmire's expert's report.  (Dkt. # 87.)

## III.   ANALYSIS

### A.  Motion to Exclude the Expert Report of Dr. Polissar[2]

The proper scope of the court's inquiry into an expert's testimony at the class certification stage is presently unclear.  Citing *American Honda Motor Company, Inc. v. Allen,* 600 F.3d 813, 815-16 (7th Cir. 2010),[3] Progressive urges the court to conduct a full *Daubert* analysis[4] of Dr. Polissar's expert report.  (*See* Mot. to Exclude (Dkt. # 87) at 2-3.)  The Ninth Circuit, however, has not yet resolved whether a full analysis under Federal Rule of Evidence 702 and *Daubert* is required at the class certification stage.  *See Dukes v. Wal-Mart Stores, Inc.,* 603 F.3d 571, 603 n.22 (9th Cir. 2010) ("We are not

---

[2] Along with her response to Progressive's motion to exclude Dr. Polissar's expert report, Ms. Fosmire submitted a declaration by Dr. Polissar.  (*See* Polissar Decl. (Dkt. # 96).)  Progressive asks the court to strike this declaration as "an untimely and unpermitted supplemental expert report."  (Reply (Dkt. # 97) at 1.)  The court finds that Dr. Polissar's declaration represents a proper evidentiary submission in response to Progressive's motion to exclude his expert report.  Further, Progressive had adequate opportunity to respond to Dr. Polissar's declaration in its reply memorandum, and thus has not been prejudiced by its submission.  Accordingly, the court denies Progressive's motion (contained within its reply memorandum) to strike Dr. Polissar's declaration.

[3] In *American Honda*, the Seventh Circuit held "that when an expert's report or testimony is critical to class certification, . . . a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion.  That is, the district court must perform a full *Daubert* analysis before certifying the class if the situation warrants."  *Am. Honda,* 600 F.3d at 815-16.

[4] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993).

1  convinced . . . that *Daubert* has exactly the same application at the class certification

2  stage as it does to expert testimony relevant at trial.  However, . . . we need not resolve

3  this issue here.") (citation omitted), *rev'd on other grounds,* --- U.S. ---, 131 S. Ct. 2541

4  (2011).

5          Nevertheless, the Supreme Court recently suggested that a full *Daubert* analysis

6  may be required even at class certification.  *See Wal-Mart Stores, Inc. v. Dukes,* --- U.S. -

7  --, 131 S. Ct. 2541, 2553-54 (2011) ("The District Court concluded the *Daubert* did not

8  apply to expert testimony at the [class] certification stage . . . . We doubt that it so. . . .").[5]

9  Despite the Supreme Court's dictum in *Dukes*, at least one circuit court has rejected the

10  notion that a trial court is required to conduct "an exhaustive and conclusive *Daubert*

11  inquiry" at the class certification stage, opting instead for "a focused *Daubert* analysis

12  which scrutinize[s] the reliability of the expert testimony in light of the criteria for class

13  certification and the current state of the evidence."  *In re Zurn Pex Plumbing Prods. Liab.*

14  *Litig.,* 644 F.3d 604, 613, 614 (8th Cir. 2011).  This court believes that *Zurn* has struck

15  the right balance.  It honors the Supreme Court's dictum in *Dukes* by applying *Daubert* at

16  class certification, but it does so in a manner that recognizes the specific criteria under

17  consideration, as well as the differing stage of discovery and state of the evidence, at the

18  class certification stage.  Further, *Zurn* is consistent with previous rulings by this court.

19  *See Hovenkotter v. Safeco Ins. Co.,* No. C09-0218JLR, 2010 WL 3984828, at *4 (W.D.

20

21          [5] The Ninth Circuit has advised that although Supreme Court dicta bear greater weight

22  than dicta from other courts, such pronouncements are still not binding on lower courts.  *United States v. Montero-Camargo,* 208 F.3d 1122, 1132 n.17 (9th Cir. 2000).

1   Wash. Oct. 11, 2010) ("[T]he court's consideration of the [experts'] opinions requires it

2   to determine whether their opinions tend to show commonality of claims and damages

3   among the class members; the court need not conduct a full *Daubert* analysis as to the

4   admissibility for trial of the expert's opinions.") (citing *Dukes,* 603 F.3d at 603 ("At the

5   class certification stage, it is enough that [the expert] presented scientifically reliable

6   evidence tending to show that a common question of fact . . . exists with respect to all

7   members of the class.")).

8          Regardless, the court need not decide whether a full *Daubert* analysis or

9   something less is required here because even under the more relaxed approach, Dr.

10  Polissar's expert report does not pass scrutiny.  Ms. Fosmire's position is that although

11  individual damages will vary, the amount of individual damages and aggregate class-

12  wide damages can be calculated using a methodology to be developed by Dr. Polissar and

13  information contained in Progressive's records.  According to Ms. Fosmire, Dr. Polissar

14  will use the data collecting protocol established by another expert in the field, Dr.

15  Bernard Siskin (who will not testify at trial), to isolate the effect of diminution value from

16  the total value of the vehicle.   Dr. Siskin, a former expert employed by Plaintiff's

17  counsel for purposes of a different litigation, collected his underlying data approximately

18  10 years ago by sending inspectors to various car auctions throughout the United States.

19  (*See* Mot. to Exclude at 5 (citing Polissar Report ¶¶ 17-21 (Ex. F to Class Cert. Mot.)).)

20  At these various auctions, the inspectors collected information on both damaged and

21  undamaged vehicles, which Dr. Siskin used to create his database.  (*Id*.)

22

1    Dr. Polissar's expert report is deficient in several ways.  First, although his

2    opinions are based on Dr. Siskin's data and methodology, there is nothing in the record to

3    indicate that Dr. Polissar has tested Dr. Siskin's underlying data to ensure its reliability or

4    that Dr. Polissar even has access to Dr. Siskin's underlying data.  (*See* Donohue Decl.

5    (Dkt. # 88) Ex. A ("Polissar Dep.") at 161:12-20; Polissar Decl. (Dkt. # 96) ¶ 39

6    ("Defendant notes that the [Siskin] data collection forms have been destroyed and cannot

7    be compared to the current data.  That is true.").)[6]  In fact, although Ms. Fosmire asserts

8    that Dr. Polissar intends to carry out his own analysis of the data (*see* Resp. to Mot. to

9    Exclude (Dkt. # 94) at 9; Polissar Decl. at ¶ 6), there is no evidence that he has done so to

10   date.[7]  In response to these criticisms, Dr. Polissar asserts that Dr. Siskin's dataset has

11   been accepted in other cases.  (Polissar Decl. at ¶¶ 2, 27.)  This fact, however, is of no

12   import here where Dr. Siskin apparently will not be available to testify at trial or

13   available for cross-examination.

14   Federal Rules of Evidence 702 and 703 permit an expert to rely upon "facts or

15   data" that is "of a type reasonably relied upon by experts in the field."  *See* Fed. R. Evid.

16   702 & 703.  The rules do not permit an expert to rely upon opinions developed by another

17   expert for purposes of litigation without independent verification of the underlying

18   ─────────────────

19   [6] Dr. Polissar does testify that he nevertheless has confidence in the conversion of the
     original data to electronic format.  (Pollisar Decl. ¶ 39.)  Dr. Polissar's confidence, however,
20   does not alleviate the underlying evidentiary problem surrounding the destruction of the original
     data collection forms upon which Dr. Siskin's original analysis was based.

21   [7] *See Hovenkotter*, 2010 WL 3984828, at *5 ("Essentially, Dr. Polissar is parroting the
22   opinions developed by Dr. Siskin.")

ORDER- 8

expert's work.  *See In re Imperial Credit Indus., Inc. Secs. Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003) (holding that it was improper for an accountant to testify to the information found in an expert report authored by a purported residual valuation expert regarding another litigation).  Under such circumstances, courts have held the expert's testimony to be inadmissible.  *Id.* at 1013 (citing cases); *see also Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1356-57 (S.D. Fla. 2006) (holding that expert's reliance on another expert's analysis developed for use in another litigation, in the admitted absence of his own verification of that analysis, was inadmissible).

Further, although Progressive produced electronic information to Ms. Fosmire on October 11, 2010, regarding UIM claims that Progressive Max paid to its insureds during the class period, Dr. Polissar does not base his opinions on this data or incorporate it into his expert opinion.  Indeed, he has never seen Progressive Max's data.  (Polissar Dep. at 27:17-21; Polissar Decl. ¶ 10.)  Remarkably, he has never even seen a description of the class.  (Polissar Dep. at 192:12-193:22.)  Instead, his opinion is based solely upon Dr. Siskin's data.  (*See id.* at 31:5-10; 143:23-144:2.)  However, the Siskin data is approximately ten years old.  (Polissar Decl. ¶ 10.)  Thus, the court concludes that the Siskin data is not representative of the vehicles in the class Ms. Fosmire seeks to certify. Dr. Polissar's own testimony is definitive on this point:

> Q:  So if I can clarify your answer, your answer is that you agree that . . . the auction survey data is not representative of the class sought to be certified, but you don't believe that that's going to be a problem for you down the road?
>
> A:  Well, wait, I have not seen a description of the class that will be applied [sic] to yet, so certainly in terms [sic] age I don't think it's going to be

1  representative of them.  I mean age – excuse me, the year of determination,
  the year of activity of the car won't be representative.

2

        \*\*\*\*\*\*\*\*\*\*\*\*

3

4  But as far as a, you know, mixture of makes and models and age at the time
  of wreck and mileages and so forth, I have not seen a description of the
  class that we will be applying this to, so I don't – I can't comment on that

5  yet.

6 (Polissar Dep. at 193:3-19.)[8]

7    Finally, Dr. Polissar has conceded that he has not yet developed a specific model

8 based on the Siskin data.  (Polissar Dep. at 28:8-16; 31:15-19.)  In his declaration, Dr.

9 Polissar states that he "will use various diagnostic methods to determine *if* the [linear

10 regression] model is appropriate for the data being considered."  (Polissar Decl. ¶ 5

11 (italics added).)  He also states that "a second method of model-building will be

12 explored, if needed:  classification and regression tree (CART)."  (*Id.* ¶ 8.)  He states

13 further that "through the progression of the case, . . . the diminished value modeling may

14 change as needed . . . ., [but] such analysis is certainly *possible* given the dataset

15 available."  (*Id.* ¶ 9 (italics added).)

16    Citing *Negrete v. Allianz Life Insurance Company,* 238 F.R.D. 482, 495 (C.D.

17 Cal. 2006), Ms. Fosmire asserts that, at the class certification stage, she need not actually

18   _____

19   [8] Although Dr. Polissar attempts to minimize the significance of this deposition
 testimony in his later filed declaration (*see* Polissar Decl. ¶¶ 22-24), he nevertheless

20 acknowledges that "[i]t is within the realm of possibility that we will find some important
 difference between the Progressive class vehicles and those studied in the auto auction

21 survey – a difference in the relationship of damage to sales price" (*id.* ¶ 25).  He states
 that if this occurs, he "will certainly address that issue," but never indicates how.  (*See*

22 *id.*)

1    supply a precise damages formula, but rather need only show that her proposed method

2    for calculating class damages is "plausible."  (Resp. at 6; *see also id* at 3 (asserting that

3    she merely needs to "offer a propose method for determining damages that is not so

4    insubstantial as to amount to no method at all") (quoting *In re Online DVD Rental*

5    *Antitrust Litig.,* 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) (internal quotations

6    omitted)).)[9]

7            In *Negrete*, the plaintiffs' expert not only identified two methods to calculate

8    damages, but had also "analyzed the vast majority of annuities at issue in th[e] case."

9    238 F.R.D. at 494.  Here, by way of contrast, Dr. Polissar has examined none of

10   Progressive's data, and has not even received a description of the proposed class.  *See*

11   *Sommers v. Apple, Inc.,* 258 F.R.D. 354, 360-61 (N.D. Cal. 2007) (where expert

12   conceded that he had not yet developed a model or worked with any data in the context

13   of the specific case, the court concluded that the plaintiff had failed to meet her burden

14   of establishing "a reliable method for proving common impact").  If Progressive had not

15   yet made its data available to Ms. Fosmire, the court's view may have been more

16   lenient.  Ms. Fosmire, however, has had the relevant data from Progressive available to

17   her since October 11, 2010[10] and yet Dr. Polissar has not even examined a representative

18

19          [9] The court doubts that the lax standard set forth in *In re Online DVD Rental* remains
20   viable following the Supreme Court's decision in *Duke* and its dicta indicating that some form of
     *Daubert* analysis is applicable at the class certification stage.  *See Dukes,* 131 S. Ct. at 2554.

21          [10] On October 11, 2010, Progressive produced to Ms. Fosmire information on 11,882
22   uninsured or underinsured motorist claims that Progressive had paid to its insureds from May
     2004 to June 2010 in the seven states in which Progressive Max issues UIM policies.  (Donohue

ORDER- 11

1   sample, let alone attempted to test either one of his proposed models.  Under the

2   foregoing specific facts, the court finds that Ms. Fosmire has failed to demonstrate that

3   Dr. Polissar's report meets the scientific reliability standard necessary at this stage in the

4   proceedings.  The court, therefore, GRANTS Progressive's motion to exclude Dr.

5   Polissar's expert report.

6        **B.  Motion for Class Certification under Rule 23(b)(2) and/or 23(b)(3)**

7        Ms. Fosmire moves to certify a nation-wide class action under Federal Rules of

8   Civil Procedure 23(b)(2) and 23(b)(3) with regard to her breach of contract claim.

9   Progressive Max issues UIM policies in seven different states.  The other three

10   defendants, which the court recently allowed Ms. Fosmire to add back into her amended

11   class action complaint, issue such policies in an additional 17 states.  Ms. Fosmire

12   proposes two separate classes to prosecute her breach of contract claim:  (1) a Rule

13   23(b)(3) class seeking monetary relief, and (2) a Rule 23(b)(2) seeking only injunctive

14   relief.

15        **1.  Standards for Class Action Certification**

16        A district court may certify a class only if all of the requirements of Federal Rule

17   of Civil Procedure 23(a) are met, including:  "(1) the class is so numerous that joinder of

18   all members is impracticable; (2) there are questions of law or fact common to the class;

19

20   Decl. ¶ 2.)  The data was produced in an excel spreadsheet and contained information, including:

21   claim year, claim number, claim report, policy identification number, policy start date, policy
end date, total loss indicator, vehicle manufacturer, vehicle model, vehicle model year, odometer

22   mileage, vehicle identification number ("VIN"), feature total payment amount, and total
deductible amount.  (*Id.*)

1    (3) the claims or defenses of the representative parties are typical of the claims or

2    defenses of the class; and (4) the representative parties will fairly and adequately protect

3    the interests of the class."  Fed. R. Civ. P. 23(a); *see also Rodriguez v. Hayes,* 591 F.3d

4    1105, 1122 (9th Cir. 2010).  These Rule 23(a) prerequisites are often referred to in

5    shorthand as numerosity, commonality, adequacy, and typicality.  Certification is proper

6    "only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule

7    23(a) have been satisfied.'"  *Dukes,* 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v.*

8    *Falcon,* 457 U.S. 147, 161 (1982)).

9            In addition to meeting the Rule 23(a) prerequisites, the party seeking class

10   certification must also fall into one of three categories under Rule 23(b).  *Zinser v.*

11   *Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d

12   1266 (9th Cir. 2001). Here, Ms. Fosmire seeks class certification of her claim for

13   damages under Rule 23(b)(3) on the basis that "questions of law or fact common to class

14   members predominate over any questions affecting only individual members, and that a

15   class action is superior to other available methods for fairly and efficiently adjudicating

16   the controversy."  Fed. R. Civ. P. 23(b)(3).  Ms. Fosmire also seeks class certification of

17   her claim for injunctive relief under Rule 23(b)(2), which applies when "the party

18   opposing the class has acted or refused to act on grounds that apply generally to the class,

19   so that final injunctive relief or corresponding declaratory relief is appropriate respecting

20   the class as a whole."  Fed. R. Civ. P. 23(b)(2).

21           "Rule 23 does not set forth a mere pleading standard."  *Dukes,* 131 S. Ct. at 2551.

22   "A party seeking class certification must affirmatively demonstrate his compliance with

1  [Rule 23]—that is, he must be prepared to prove that there are in fact sufficiently

2  numerous parties, common questions of law or fact, etc." *Id.* "[S]ometimes it may be

3  necessary for the court to probe behind the pleadings before coming to rest on the

4  certification question." *Id.* (quoting *Falcon,* 457 U.S. at 160). "The class determination

5  generally involves considerations that are enmeshed in the factual and legal issues

6  comprising the plaintiff's cause of action." *Id.* (quoting *Falcon,* 457 U .S. at 160). If a

7  court is not fully satisfied that the requirements of Rules 23(a) and (b) have been met,

8  certification should be refused. *Falcon,* 457 U.S. at 161.

9        **2.  Rule 23(a) Prerequisites**

10        To satisfy Rule 23(a)'s numerosity prerequisite, Ms. Fosmire asserts that there are

11  potentially thousands of class members.  Progressive does not dispute Ms. Fosmire's

12  assertion that the numerosity prerequisite is satisfied.  Although Progressive vigorously

13  disputes that common questions predominate over individual questions under Rule

14  23(b)(3), Progressive does not mount any serious opposition to Ms. Fosmire's assertion

15  that Rule 23(a)'s commonality prerequisite is met as well.  Progressive does, however,

16  dispute that Ms. Fosmire satisfies either the typicality or the adequacy prerequisite.

17        **a.  Typicality**

18        To demonstrate typicality, Ms. Fosmire must show that her claims are typical of

19  the class.  Fed. R. Civ. P. 23(a)(3).  "The test of typicality 'is whether other members

20  have the same or similar injury, whether the action is based on conduct which is not

21  unique to the named plaintiffs, and whether other class members have been injured by the

22  same course of conduct.'"  *Ellis v. Costco Wholesale Corp.*, --- F.3d ----, 2011 WL

ORDER- 14

1   4336668, at *11 (9th Cir. Sept. 16, 2011) (quoting *Hanon v. Dataproducts Corp.,* 976

2   F.2d 497, 508 (9th Cir. 1992) (citation omitted)).  "Typicality refers to the nature of the

3   claim or defense of the class representative, and not to the specific facts from which it

4   arose or the relief sought." *Id.* (internal citation and quotation marks omitted).  "[A]

5   named plaintiff's motion for class certification should not be granted if 'there is a danger

6   that absent class members will suffer if their representative is preoccupied with defenses

7   unique to it.'" *Hanon,* 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill*

8   *Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990)).

9        Progressive asserts that Ms. Fosmire's claim lacks typicality with the putative

10   class for two reasons.  First, Progressive asserts that her automobile has suffered from

11   damage from other accidents during time periods when Progressive was not her insurer,

12   both prior to and after the accident at issue, rendering "it virtually impossible to

13   determine whether any diminished value loss should be attributable to the 2007

14   accident."  (Resp. to Class Cert. Mot. (Dkt. # 89) at 20.)  Second, Progressive asserts

15   that when she purchased her policy, she made a material misrepresentation regarding

16   who would drive her car, and that it was not until after her accident in 2007 (during

17   which her fiancé was at the wheel) that Ms. Fosmire acknowledged that her fiancé was a

18   regular driver in her household who should be added to the policy.  (*Id.* at 21-22 (citing

19   Glade Decl. (Dkt. # 90) Ex. D ("Fosmire Dep.") at 53:9-55:13 & 56:14-17, & Exs. I, J,

20   & K).)

21        In response, Ms. Fosmire asserts that, at the time of her vehicle inspection,

22   Progressive recorded any repaired or unrepaired damage from prior accidents so that

ORDER- 15

1   such losses could be segregated from diminished value with respect to the 2007

2   accident.  (Reply to Class Cert. Mot. (Dkt. # 98) at 2.)  She also argues that subsequent

3   damage to her vehicle is irrelevant as damages are calculated at the time that Progressive

4   inspects a vehicle.  (*Id.*)  The court finds it likely that many automobiles among the

5   thousands within the proposed class may have sustained damage prior to the accident

6   that qualifies them as part of the purported class.  While the issue of other accidents

7   related to subject vehicles in the proposed class may impact the issue of predominance

8   under Rule 23(b)(3), it does not render Ms. Fosmire's claim atypical of the proposed

9   class under Rule 23(a).

10          The court is, however, more concerned about the second issue, namely: whether

11  Ms. Fosmire made a material misrepresentation upon her insurance application by

12  failing to identify her fiancé as an additional driver of her automobile.  While Ms.

13  Fosmire asserts that she did not make a material misrepresentation because her fiancé

14  did not meet the definition of an additional driver (Reply to Class Cert. Mot. at 2 n.4),

15  the court is concerned that litigation concerning this defense will preoccupy Ms. Fosmire

16  to the detriment of class claims irrespective of whether she ultimately prevails.[11]  In

17  addition, it threatens to undermine her credibility at trial, which also undermines the

18  _____

19          [11] Whether a misrepresentation is made with an intent to deceive is a question of
     fact under Washington law.  *See Cutter & Buck, Inc. v. Genesis Ins. Co.,* 306 F. Supp. 2d

20  988, 1004 (W.D. Wash. 2004) (citing *Wilburn v. Pioneer Mutual Life Ins. Co.*, 508 P.2d
     632, 635 (Wash. 1973)).  The Washington Supreme Court has noted, however, that

21  "[w]hen a false statement has been made knowingly, there is a presumption that it was
     made with intent to deceive . . . ." *Id.* (citing *Music v. United Ins. Co. of Am.*, 370 P.2d

22  603, 606 (Wash. 1962). Further, in the absence of credible evidence that the alleged false
     representations were made without an intent to deceive, the presumption prevails.  *Id.*

1    element of typicality.  *See, e.g., Drake v. Morgan Stanley & Co.,* No. CV 09-6467 ODW

2    (RCx), 2010 WL 2175819, at *5 (C.D. Cal. Apr. 30, 2010) (questions concerning the

3    named plaintiff's "lack of credibility," in part, renders her claim atypical).  The court

4    finds that the existence of this potential defense to coverage under Ms. Fosmire's policy,

5    as well as associated questions concerning her credibility, threaten to become a

6    preoccupation of the trial in this matter.  Accordingly, the court concludes that Ms.

7    Fosmire has failed to establish the typicality requirement of Rule 23(a).

8            **b. Adequacy**

9            Rule 23(a)(4) provides that class representatives must "fairly and adequately

10   protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry under

11   Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class

12   they seek to represent."  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

13          "In Washington, stigma damages are not considered diminished value."

14   *Degenhart v. AIU Holdings, Inc.*, No. C10-5172RBL, 2010 WL 4852200, at * 5 (W.D.

15   Wash. Nov. 26, 2010).

16           Rather, diminished value loss arises when a vehicle sustains physical
             damage in an accident, but due to the nature of the damage, it cannot be
17           fully restored to its pre-loss condition. The remaining physical damage,
             such as weakened metal which cannot be repaired results in diminished
18           value.

19   *Id.* (citing *Moeller v. Farmers Ins. Co.*, 229 P.3d 857, 861-62 (Wash. Ct. App. 2010)).

20   Accordingly, Ms. Fosmire has defined the class to exclude any claims for stigma

21   damages.  (*See* Reply to Class Cert. Mot. at 2-3.)  While this decision may maximize Ms.

22   Fosmire's ability to assert commonality between her claim and other class members'

1   claims under Rule 23(a)(2), as well as the predominance of common questions over

2   individual questions under Rule 23(b)(3), it creates other issues with regard to the

3   adequacy of Ms. Fosmire's representation of the putative class.

4          As a result of Ms. Fosmire's claim splitting, class members from other states who

5   have both diminished value claims arising from residual property damage, as well as

6   stigma damages, cannot bring their stigma damages claims in this lawsuit.  Progressive

7   asserts that these class members risk being prevented by the doctrines of claim or issue

8   preclusion from ever pursuing stigma damages in another lawsuit.  (Resp. to Class Cert.

9   at 22.)  The court agrees, and concludes that Ms. Fosmire's attempt to split her putative

10  class members' claim by excluding stigma damages creates a conflict between her

11  interests and the interests of the putative class, rendering her an inadequate class

12  representative.  *See, e.g., Sanchez v. Wal Mart Stores, Inc.,* No. 2:06-CV-02573-JAM-

13  KJM, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (finding that plaintiff's

14  "strategic claim-splitting decision creates a conflict between Plaintiff's interests and those

15  of the putative class, and renders Plaintiff an inadequate class representative"); *Kruegger*

16  *v. Wyeth, Inc.,* No. 03cv2496 JLS (AJB), 2008 WL 481956, at *2-*4 (S.D. Cal. Feb. 19,

17  2008) ("[T]he existence of claim splitting constitutes a compelling reason to deny class

18  certification.").

19      **3.  Rule 23(b)(3) Criteria**

20         Even assuming that Ms. Fosmire's claim met the foundational requirements of

21  typicality and adequacy under Rule 23(a), her claim still would not qualify for class

22  certification under the requirements of Rule 23(b).  Ms. Fosmire alleges that common

1    questions of law or fact predominate over individual questions because (1) the relevant

2    language in the various policies is highly similar (*see* Class Cert. Mot. Ex. A.); (2)

3    Progressive's "don't ask, don't tell" policy is consistent throughout the relevant states;

4    (3) the breach of contract claims have similar elements in all relevant states; (4) the states

5    at issue recognize that diminished value is recoverable under tort law (*see id.* Ex. B); and

6    (5) according to Ms. Fosmire, a class-wide determination of diminution of value damages

7    is possible.[12]

8           The court, however, concludes that individual, and not common, questions will

9    predominate in this lawsuit.  There are at least seven states in which Progressive Max

10   issues policies with UIM coverage, and at least 17 forms of those policies.  In addition, as

11   a result of the court's prior ruling granting Ms. Fosmire's motion to amend her complaint

12   to add once again the other three Progressive Defendants (*see* Order (Dkt. # 104)), there

13   may ultimately be a total of 24 states in Ms. Fosmire's purported class.[13]  UIM coverage

14   "is a creature both of statute and of contract.  That is, the source of the obligation to offer

15   UIM coverage is statutory, . . . while the contractual relationship between the insured and

16   the insurer governs the scope of coverage, subject to the minimum coverage requirements

17   set forth in the UIM statute."  *Mansker v. Farmers Ins. Co. of Wash.,* C10-0511JLR, 2010

18   _____

19          [12] It is unclear to the court how Ms. Fosmire can establish class damages following the
     court's order that her damages expert, Dr. Polissar, failed to establish the requisite level of
20   scientific reliability for this stage of the proceeding.  (*See supra* § III.A.)  In any event, the court
     concludes that class certification is also unwarranted on grounds unrelated to Dr. Polissar's
21   expert report.

22          [13] At oral argument, counsel for Ms. Fosmire represented that she intended to file an
     additional motion seeking class certification for these additional 17 states.

ORDER- 19

1   WL 3699856, *4 (W.D. Wash. Sept. 14, 2010) (internal citations and quotation marks

2   omitted).  Thus, the court's evaluation of the applicability of Rule 24(b)(3) here requires

3   an analysis of both the statutory or legal source of coverage in each of the class states, as

4   well as the specific contract language issued by Progressive in each of these states.

5        Although Ms. Fosmire asserts that tort law in the seven states in which Progressive

6   Max issues UIM policies uniformly requires Progressive to pay diminution in value (*see,*

7   *e.g.* Class Cert. Mot. Ex. B), in fact only one of the states at issue, Georgia, has addressed

8   and affirmatively ruled on the availability of diminution of value damages in addition to

9   the cost of repair under a UIM policy.  *See State Farm Mut. Auto. Ins. Co. v. Mabry,* 556

10  S.E. 2d 114, 123 (Ga. 2001).  Further, the language of each UIM statute varies to some

11  degree. (*See* Glade Decl. (Dkt. # 90) Ex. DD.)  Thus, determining whether each statute

12  requires diminution damages would require an evaluation of the interplay between the

13  statutory language and the tort law in each state.

14       In addition, every policy is governed by a different state's breach of contract law,

15  which in turn is determined by the contract's choice-of-law provision.  Each state's

16  breach of contract jurisprudence varies to some degree, including with respect to the

17  length of the applicable statute of limitations, forms of recovery, and available contract

18  defenses.   All of these distinctions must be evaluated in light of the differing contract

19  language in each of the various policy forms.  While much of the language in these form

20  policies is similar, there are nevertheless distinctions in the operative policy language and

21  in the definitions of damages.  (Class Cert. Mot. Ex. A.)  Finally, there are also serious

22  due process issues entailed in certifying a multi-state class in which a court sitting in

ORDER- 20

1    Washington with no personal jurisdiction over a class member in another state (for

2    example, Georgia) other than that he or she did not opt out of this class action, determines

3    his or her claim for diminution in value under Washington law, as Ms. Fosmire proposes.

4    *See, e.g., Phillips Petro. Co. v. Shutts,* 472 U.S. 797, 818-23 (1985) (applying forum's

5    state law in class action to out-of-state class plaintiff without significant contacts to

6    forum violates due process).

7        Yet, Ms. Fosmire asks this court to make a determination as to the availability of

8    diminution damages in at least seven (and perhaps 24) different states.  Because Ms.

9    Fosmire seeks certification of a multi-state class for which the law of so many states

10   potentially applies, she bears "the burden of demonstrating a suitable and realistic plan

11   for trial of the class claims." *See Zinser,* 253 F.3d at 1189 (internal quotations omitted).

12   Based on the foregoing discussion, the court finds that Ms. Fosmire has failed to meet

13   this burden.  *See, e.g., Schnall v. AT & T Wireless Servs., Inc.,* 171 Wn.2d 260, 271-73,

14   259 P.3d 129 (Wash. 2011) (citing survey of federal cases denying certification of multi-

15   state class action when doing so would require the application of multiple states' laws);

16   *see also Hovenkotter,* 2010 WL 3984828 *1, *7 (denying class certification of UIM

17   multi-state class action for similar reasons).  Accordingly, the court denies Ms. Fosmire's

18   motion to certify her putative class action under Rule 23(b)(3).

19       **4. Rule 23(b)(2) Criteria**

20       For similar reasons, the court also denies certification under Rule 23(b)(2).  Rule

21   23(b)(2) provides that a class action may be maintained if "the party opposing the class

22   has acted or refused to act on grounds that apply generally to the class, so that final

1    injunctive relief or corresponding declaratory relief is appropriate respecting the class as

2    a whole."  Fed. R. Civ. P. 23(b)(2).  Based on this language, courts have held that class

3    claims under Rule 23(b)(2) must be "cohesive."  *See Grayson v. 7-Eleven, Inc.,* No. 09-

4    CV-1353 MMA (WMc), 2011 WL 2414378, at * 2 (S.D. Cal. June 10, 2011) (citing

5    *Dukes,* 603 F.3d at 622 (describing Rule 23(b)(2) as "highly cohesive")); *Sweet v. Pfizer,*

6    232 F.R.D. 360, 374 (C.D. Cal. 2005) ("[C]ourts have held that even though Rule

7    23(b)(2), unlike Rule 23(b)(3), does not specifically contain predominance and

8    superiority requirements, a class under Rule 23(b)(2) must not be overrun with individual

9    issues."); *Lewallen v. Medtronic USA, Inc.,* No C 01-20395 RMW, 2002 WL 31300899,

10   at *3 (N.D. Cal. Aug. 28, 2002) ("[T]o be certified under Rule 23(b)(2), the class claims

11   must be cohesive. . . .  [T]he requisite cohesiveness is lacking where individual issues

12   predominate.").  "These authorities suggest Rule 23(b)(2) requires that a common legal

13   ground be generally applicable to the class."  *Grayson,* 2011 WL 2414378, at *2.

14   Because, as described above, the individual issues contained with this proposed multi-

15   state class action overrun the common issues, the cohesiveness requirement for class

16   certification under Rule 23(b)(2) is not met here.

17        In addition, the Supreme Court has recently held that class certification under Rule

18   23(b)(2) is not appropriate with respect to claims for monetary relief, at least where

19   monetary relief is not incidental to the injunctive or declaratory relief.  *Dukes,* --- U.S. ---,

20   131 S. Ct. at 2557.  In *Dukes*, the Supreme Court referenced the *Allison v. Citgo*

21   *Petroleum Corp.,* 151 F.3d 402 (5th Cir. 1998), definition of "incidental."  *See Dukes,*

22   131 S.Ct. at 2560.  In *Allison,* the Fifth Circuit stated that incidental damages "should at

1   least be capable of computation by means of objective standards and not dependent in

2   any significant way on the intangible, subjective differences of each class member's

3   circumstances" and should not "entail complex individualized determinations," rather

4   such damages should "be more of a nature of a group remedy."  151 F.3d at 415.  As

5   discussed above, the individual issues contained within this putative multi-state class

6   action predominate, and thus the monetary damages sought by Ms. Fosmire and the

7   putative class are not "incidental."

8       Ms. Fosmire, nevertheless, asserts that this case is distinguishable from *Dukes*

9   because she has sought to certify a separate class with regard to her damages claim under

10  Rule 23(b)(3), and thus only injunctive or declaratory relief will be awarded under Rule

11  23(b)(2).  (*See* Plaint. Supp. Resp. (Dkt. # 103).)  The court, however, is unconvinced by

12  Ms. Fosmire's attempt to distinguish her putative Rule 23(b)(2) class from *Dukes*.  First,

13  her original class certification motion expressly requests "equitable compensation" as

14  part of the relief sought in her Rule 23(b)(2) putative class action.  (*See* Class Cert. Mot.

15  at 22-23.)  Further, the court has already found the class certification under Rule 23(b)(3)

16  is inappropriate (*see supra* § III.B.3) and thus Ms. Fosmire's putative Rule 23(b)(3) class

17  is not available to serve as a separate vehicle for class damages.  Accordingly, the court

18  finds the Supreme Court's ruling in *Dukes* is applicable, and denies Ms. Fosmire's

19  motion for class certification under Rule 23(b)(2).

20      **5.  Plaintiff's Request for Sub-Classes**

21      In a footnote in her original motion, Ms. Fosmire states that "[s]hould the court

22  find it appropriate to certify a subclass consisting of less than all Class States or

1   Washington-only, Ms. Fosmrie requests the Court utilize its discretion in certifying such

2   a subclass." (Class Cert. Mot. at 24, n.49.)  Ms. Fosmire also makes a request for the

3   designation of subclasses in a paragraph of her reply memorandum.  (Reply to Class Cert.

4   Mot. at 10.)  In her reply, she proposes a subclass that includes only those states in which

5   Progressive admits diminished value is owed and yet knowingly under pays it, and a

6   second subclass comprised of those states where Progressive denies diminished value

7   claims based on an overly restrictive view of the states' law.  (*Id.*)  Alternatively, she

8   requests that the court certify a subclass comprised of only Washington insureds.  (*Id.*)

9        The court does not "'bear the burden of constructing subclasses' or otherwise

10   correcting Rule 23(a) problems; rather, the burden is on the plaintiff to submit proposals

11   to the court." *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001)

12   (quoting *U.S. Parole Comm. v. Geraghty*, 445 U.S. 388, 408 (1980)).  Thus, Ms. Fosmire

13   bears the burden of establishing the appropriate subclasses and demonstrating that each

14   subclass meets the Rule 23 requirements.  *Rivera v. Bio Engineered Supplements &*

15   *Nutrition, Inc.,* No. SACV07-1306JVS(RNBX), 2008 WL 4906433, at *3 (C.D. Cal.

16   Nov. 13, 2008).  She must come forward with the exact definition of each subclass, its

17   representatives, and the reasons each subclass meets the prerequisites of Rule 23(a) and

18   (b). *Id.* (citing *Zinser,* 253 F.3d at 1190).  Neither the footnote in her original motion or

19   the paragraph contained within her reply memorandum serve to satisfy Ms. Fosmire's

20   burden here.  Further, as noted above, the Rule 23(a) foundational requirement of

21   typicality is lacking with regard to Ms. Fosmire due to her alleged material

22   misrepresentation on her UIM insurance application.  (*See supra* § III.B.2.a.)  The

1   subclasses proposed by Ms. Fosmire would not resolve this issue.  Accordingly, the court

2   declines to exercise its discretion to certify subclasses.

3                             IV.    CONCLUSION

4          Based on the foregoing, the court GRANTS Progressive's motion the exclude the

5   expert report of Dr. Polissar (Dkt. # 87), and DENIES Ms. Fosmire's motion for class

6   certification (Dkt. ## 64 (sealed) & 91 (redacted)).

7          Dated this 11th day of October, 2011.

8

9                                      _____

10                                      JAMES L. ROBART
                                        United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 25